**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Nancy Helmold, individually and on behalf of all others similarly situated,<br>*Plaintiff,*<br>v.<br>Food Service Solutions, Inc., and John Does 1–10,<br>*Defendants*. | Case No. 1:26-cv-03485<br>Judge John F. Kness |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Nancy Helmold (**"Plaintiff"**), individually and on behalf of other similarly situated individuals, brings this First Amended Class Action Complaint and demand for jury trial against Defendants Food Service Solutions, Inc. (**"FSS"**) and John Does 1–10 (collectively, **"Defendants"**), and in support states as follows:

## NATURE OF THE ACTION

1. FSS is a company that provided online payment technology to K-12 school districts across the United States. FSS owns and/or operates, and/or has owned and/or operated, MySchoolAccount, a payment interface marketed to school districts for managing student lunch-account payments.

2. MySchoolAccount functions and/or functioned as an Online Student Information System ("SIS") for lunch account payments. SIS platforms are used by K-12 school districts to manage student records and district operations. These systems typically include modules for student demographics, class schedules, attendance, grades, parent portals, state reporting, compliance, discipline and special education plans, human resources, payroll, and finance.

3. SIS platforms, including MySchoolAccount, do not themselves process payments. Instead, school districts integrate the MySchoolAccount portal so that parents can initiate lunch money payments through the MySchoolAccount SIS interface, while FSS and/or one or more John Doe Defendants act as the merchant of record and process the payments. In other words, while MySchoolAccount operates as an interface that allows parents to make lunch money payments, the payments are processed by FSS and/or one or more John Doe Defendants.

4. FSS and/or one or more John Doe Defendants, outside of the MySchoolAccount interface, also integrate or integrated with other widely used SIS platforms and school food-service systems, including PowerSchool, Skyward (Family Access and Qmlativ), Café Enterprise, Meals Plus, Nutrikids, JMC, eTrition, Lumen, QSP, School Dining, Springbrook, Tyler Food, WebSmartt, WinSNAP, and Wordware. These integrations allow data regarding lunch account balances and transactions to flow between these SIS platforms and the applicable payment portal. Plaintiff alleges that the SIS platforms themselves do not impose or collect any transaction fees; rather, FSS and/or one or more John Doe Defendants imposed, collected, retained, controlled, or benefited from the fees.

5. Parents are directed from an SIS to the applicable payment portal when they added money to a student's lunch account.

6. This class action challenges the practice of imposing a flat $4 "Transaction Fee" each time a parent adds money to a student's lunch account through the MySchoolAccount payment interface or a substantially similar payment flow controlled, operated, or processed by FSS and/or one or more John Doe Defendants.

7. The Transaction Fee is disclosed for the first time to parents only at the final payment screen, after the parent has already selected a deposit amount and been routed into the

applicable payment flow. No disclosure of this fee is provided in any account setup materials, pre-transaction notifications, or marketing or explanatory content describing the portal.

8. In reality, the Transaction Fee functions as a card-related surcharge, that is not tied to any cost imposed by the school district itself, nor is it tied to any cost incurred by FSS or any John Doe Defendant in connection with processing a particular school lunch payment.

9. The imposition of a flat, undisclosed Transaction Fee, revealed only at the final stage of a lunch payment transaction, constitutes a deceptive "drip pricing" scheme. The responsible Defendants' promotional materials and user experience do not inform parents of this fee prior to final checkout. The integrated SIS platforms likewise do not disclose the fee before the parent proceeds through the payment flow. As a result, parents are misled about the total cost of making lunch money payments and are prevented from engaging in informed decision-making.

10. More specifically, when a parent logs into an SIS and selects to add funds to a lunch account, there is no disclosure of the Transaction Fee inside the SIS. The parent proceeds to select an amount to deposit, advances to the applicable payment interface, and is presented with the $4 fee only at the final checkout page.

11. At that point, a parent who needs to fund a child's lunch account has no practical ability to abandon the transaction without leaving their child's lunch account unfunded.

12. Parents therefore face a coercive choice: proceed with payment of the previously undisclosed $4 Transaction Fee, or leave their child without funds for meals.

13. Some school districts may accept cash or checks as payment for lunch fees, but those alternatives are often impractical or burdensome for many families. As observed by the Consumer Financial Protection Bureau, alternative payment methods often impose additional

burdens, including transportation costs, limited accessibility, or the need to obtain banking products.

14. As a result, many parents are left with no practical alternatives but to pay the Transaction Fee.

15. The last-minute imposition of this undisclosed, flat, excessive fee is unfair, deceptive, misleading, and unlawful under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and other applicable law.

16. Plaintiff and the Class seek refunds of Transaction Fees paid to or for the benefit of Defendants, as well as punitive damages, attorneys' fees, and other relief authorized by law.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act, "CAFA") because: (a) the amount in controversy exceeds $5,000,000 in the aggregate; (b) the Class consist of more than 100 members; and (c) at least one member of a proposed class is a citizen of a state different from at least one Defendant.

18. This Court has personal jurisdiction over FSS because FSS conducts or conducted business transactions in Illinois and purposefully directs or directed its business activities toward Illinois consumers, including consumers in this District, and the claims asserted herein arise out of or relate to those activities. The exercise of personal jurisdiction over FSS therefore comports with the Due Process Clause. This Court likewise has personal jurisdiction over any John Doe Defendant that purposefully directed, controlled, implemented, approved, or profited from the challenged payment practices aimed at Illinois consumers alleged herein. The identities and respective roles of the John Doe Defendants will be further confirmed through discovery.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff's transactions and the alleged deceptive payment practices at issue occurred in this District and were directed at consumers located in this District. FSS is subject to personal jurisdiction in this District, and Plaintiff alleges that any John Doe Defendant whose conduct is at issue is likewise subject to personal jurisdiction.

## PARTIES

20. Plaintiff Nancy Helmold is a natural person and citizen of Illinois who resides in this District.

21. Defendant Food Service Solutions, Inc. ("FSS") is a Pennsylvania corporation that owns or owned and operates or operated the MySchoolAccount payment platform and related services at issue in this Complaint. FSS processes or processed payments on behalf of K-12 school districts and imposed the Transaction Fee on parents who used its payment portal. FSS transacts or transacted business in the State of Illinois, including this District, and directed the challenged practices at Illinois residents.

22. FSS has ceased operations. Upon information and belief, FSS was the subject of one or more corporate transactions before its cessation, and FSS currently has no employees and no material assets. Plaintiff seeks discovery concerning the circumstances of FSS's cessation, the disposition of its business assets, the continuation of any MySchoolAccount-related services, and the entities, if any, that received, retained, controlled, or benefited from Transaction Fee revenues.

23. Defendants John Does 1-10 ("John Does") are corporations, limited liability companies, or other business entities whose true identities and exact number are presently

unknown to Plaintiff despite Plaintiff's diligent jurisdictional discovery efforts. The John Doe Defendants are entities related to FSS or its payment operations, including possible acquirers, successors, parent companies, direct participants, controlling affiliates, or transferees, that may be liable to Plaintiff and the Class under the theories set forth herein. Based on discovery conducted to date, Plaintiff believes the John Doe Defendants include, without limitation, the following categories of entities:

a. The Successor Entity/Entities: The entity or entities, if any, that acquired FSS shares or assets, assumed FSS liabilities, continued FSS's enterprise, participated in a merger or de facto merger, received assets or revenues from FSS, or otherwise became legally responsible for FSS's obligations. Plaintiff pleads these theories in the alternative pending discovery into the relevant transaction structure(s), governing law, post-transaction operations, and flow of funds.

b. The "V" Entity/Entities: The entity or entities responsible for the "V" branding or logo displayed on the MySchoolAccount payment portal at or near the point of transaction when Plaintiff and Class members made payments. Upon information and belief, one or more such entities owned, operated, controlled, directed, participated in, or supported the payment-processing infrastructure underlying the MySchoolAccount portal; participated in the collection, retention, allocation, or control of Transaction Fee revenues; and/or directed, managed, approved, or implemented the challenged payment-processing practices and fee-setting decisions.

c. Parent and Controlling Entities: Any parent company, holding company, or entity that exercised control over and/or directed FSS's operations, fee-setting decisions,

payment-flow design, or disbursement of Transaction Fee revenues, and/or that directly benefited from the challenged practices alleged herein.

d. Any Additional Related Entities: Any other entities related to FSS or its payment operations that participated in, directed, facilitated, controlled, or profited from the challenged Transaction Fee practices alleged herein, the identities of which have not yet been disclosed through discovery.

24. Plaintiff will seek leave to amend this Complaint to identify each John Doe Defendant by its true name and to specify the claims and factual basis for liability against each as their identities and roles are ascertained through discovery. Plaintiff alleges that the John Doe Defendants include entities that may have performed different roles in the challenged payment process, including operating the interface, setting or approving the fee, processing payments, receiving or retaining fee revenues, controlling FSS, acquiring FSS shares or assets, or continuing FSS-related operations. Plaintiff does not allege that every John Doe Defendant performed every role; instead, Plaintiff pleads these roles in the alternative until discovery identifies the responsible entities.

25. As used herein, “responsible Defendants” refers to FSS and any John Doe Defendant shown through discovery to have directed, controlled, implemented, approved, participated in, received revenues from, retained revenues from, controlled revenues from, or been unjustly benefited by the challenged Transaction Fee practices.

## GENERAL FACTUAL ALLEGATIONS

**Defendants' Transaction Fee**

26. FSS was a significant participant in the K-12 school-payment industry, including through MySchoolAccount and integrations with other student-information or school food-service platforms.

27. FSS owns and operates and/or owned and operated MySchoolAccount, an electronic payment interface for parents to deposit funds into student lunch accounts.

28. For school lunch payments, the MySchoolAccount interface allowed parents to deposit funds into a student account that functions like a stored-value account used exclusively for school meals. Plaintiff alleges that FSS and/or one or more John Doe Defendants participated in processing or completing those payments.

29. By paying electronically through MySchoolAccount, parents avoided having their children carry cash or checks to school, staff losing cash or checks, travel costs associated with delivering funds to school, or taking time off work to provide payments.

30. To carry out MySchoolAccount payment operations, FSS entered into agreements with school districts or related entities concerning lunch-account payment services, which makes these entities "merchants" for credit/debit card processing purposes.

31. To the extent the relevant agreements, card-network rules, or other payment rules governed Plaintiff's transactions, those agreements and rules are relevant to the classification, disclosure, and permissible amount of the Transaction Fee. Plaintiff pleads those contractual and payment-rule allegations based on presently available information and reserves the right to amend as discovery identifies the operative agreements, parties, provisions, and payment roles.

32. The challenged payment-processing operation provided profit streams for FSS and/or one or more John Doe Defendants.

33. First, FSS was compensated under its agreements with school districts for providing payment processing services.

34. Second, FSS and/or one or more John Doe Defendants imposed a flat Transaction Fee on parents for each lunch-money payment, regardless of the amount of the payment. The Transaction Fee was unrelated to the actual cost incurred of processing any particular transaction.

35. Upon information and belief, the Transaction Fee was a mechanism by which FSS and/or one or more John Doe Defendants shifted processing costs, and generated additional revenue, from parents.

36. In practice, the Transaction Fee was applied each time a parent deposited funds for lunch costs. Because the Transaction Fee was flat, small monetary deposits created a disproportionately high fee percentage relative to the deposit amounts, most significantly impacting families with limited means.

**FSS's Acquisition, Cessation of Operations, and Corporate Successor Liability**

37. FSS was the subject of one or more corporate transactions before it ceased operations. Plaintiff does not yet know whether and to what extent those transactions involved asset transfers, mergers, assumptions of liabilities, direct participation in operations, continuation of operations, or transfers of Transaction Fee revenues.

38. In or around August 2025, FSS ceased all operations. FSS currently has no employees and, upon information and belief, has no material assets with which to satisfy a judgment. Plaintiff seeks discovery concerning the circumstances of FSS's cessation, the

disposition of its business assets, the continuation of any MySchoolAccount-related services, and the entities that received or retained Transaction Fee revenues.

39. Plaintiff pleads successor, assumed-liability, merger, continuation, transferee, and direct participation liability, and unjust-enrichment theories in the alternative, pending discovery into the transaction structures, post-transaction operations, and flow of funds. To the extent discovery shows that one or more John Doe Defendants acquired FSS's assets, assumed its liabilities, continued its enterprise, participated in a de facto merger, directly participated in FSS's conduct, or received assets or revenues in one or more transactions intended to avoid liability, those entities are liable for FSS's obligations to Plaintiff and the Class under the applicable successor-liability, direct participation liability, assumed-liability, merger, continuation, or transferee-liability doctrines.

40. Upon information and belief, Transaction Fee revenues collected during FSS's operation were directed to, retained by, controlled by, or otherwise benefited FSS and/or one or more John Doe Defendants, including one or more Successor Entity John Does, V Entity John Does, or Parent and Controlling Entity John Does. The precise recipients, allocations, and flow of those funds are uniquely within Defendants' knowledge and will be confirmed through discovery.

41. FSS's cessation of operations does not extinguish the liability of any entity that is legally responsible for FSS's obligations or that received, retained, controlled, or was unjustly enriched by Transaction Fee revenues. Plaintiff reserves the right to amend her allegations as discovery identifies the responsible entities, relevant transaction structures, and flow of funds.

**Applicable Payment Rules Support the Alleged Misleading Presentation of the Transaction Fee**

42. Upon information and belief, FSS and/or one or more John Doe Defendants participated in the card-payment flow through which parents paid Transaction Fees in connection with school lunch-account deposits. The precise role of each participating entity is uniquely within Defendants' knowledge and will be confirmed through discovery.

43. To the extent FSS or any John Doe Defendant was bound by district agreements, card-network rules, or other payment rules governing Plaintiff's Visa credit-card transactions, those agreements and rules required disclosures, limitations, classifications, or other payment terms relevant to whether the Transaction Fee was fairly and lawfully presented to consumers.

44. Plaintiff pleads the card-network allegations as evidence that the presentation of the Transaction Fee was misleading, unfair, and contrary to applicable payment-industry requirements, and not as an independent private right of action under the card-network rules themselves.

45. Using Plaintiff's Visa credit-card transactions as an example, if the $4 Transaction Fee is classified as a surcharge, then the timing, content, and clarity of the disclosure are material to whether the fee was properly presented. Plaintiff alleges that the Transaction Fee was not disclosed before the final checkout screen and was not explained in a manner that allowed Plaintiff and Class members to understand its nature, basis, recipient, or relationship to the card-payment transaction before she or he proceeded through the payment flow.

46. Plaintiff alleges that the applicable agreements and payment rules governing the Visa credit-card transactions at issue here are relevant evidence that reasonable consumers were entitled to clear advance disclosure of the challenged fee and that the late-stage presentation of the Transaction Fee was deceptive, misleading and unfair.

47. Specifically, as depicted below, Visa rules provide that any credit/debit card surcharge be clearly and prominently disclosed to the consumer at the point of entry and the point of transaction; moreover, at the point of transaction, this disclosure must include the exact amount or percentage of the surcharge and a statement that the surcharge is not in an amount greater than the applicable merchant discount rate for Visa transactions:

### 5.5.1.9 Credit Card Surcharge Disclosure Requirements – Canada, US Region, and US Territories

In the Canada Region, US Region, or a US Territory: A Merchant must, at both the point of entry into the Merchant Outlet and the Point-of-Transaction, clearly and prominently disclose any Credit Card Surcharge that will be assessed.

The disclosure at the Point-of-Transaction must include all of the following:

- The exact amount or percentage of the Credit Card Surcharge
- A statement that the Credit Card Surcharge is being assessed by the Merchant and is only applicable to credit Transactions
- In the US Region or a US Territory: A statement that the Credit Card Surcharge amount is not greater than the applicable Merchant Discount Rate for Visa Credit Card Transactions at the Merchant

For example, the requirement for clear and prominent disclosure will be satisfied if the disclosure is made consistent with *Table 5-3, Surcharge Disclosure – Canada Region, US Region, and US Territories*:

**Table 5-3: Surcharge Disclosure – Canada Region, US Region, and US Territories**

| Transaction Type | Point-of-Entry | Point-of-Transaction |
|---|---|---|
| Face-to-Face Transaction | Main entrance(s) of the Merchant Outlet, in a minimum 32-point Arial font, but in any case no smaller or less prominent than surrounding text | Every customer checkout or payment location, in a minimum 16-point Arial font, but in any case no smaller or less prominent than surrounding text |
| Electronic Commerce Transaction | The first page that references credit card brands accepted, in a minimum 10-point Arial font, but in any case no smaller or less prominent than surrounding text | Checkout page, in a minimum 10-point Arial font, but in any case no smaller or less prominent than surrounding text |
| Mail order Transaction | The first page of the catalog that references credit card brands accepted, in a minimum 8-point Arial font, but in any case no smaller or less prominent than surrounding text | Mail order form, in a minimum 10-point Arial font, but in any case no smaller or less prominent than surrounding text |


© 2014—2025 Visa. All Rights Reserved.



**Table 5-3: Surcharge Disclosure – Canada Region, US Region, and US Territories (continued)**

| Transaction Type | Point-of-Entry | Point-of-Transaction |
|---|---|---|
| Telephone order Transaction | The first page of the catalog that references credit card brands accepted, in a minimum 8-point Arial font, but in any case no smaller or less prominent than surrounding text | Verbal notice from the telephone order clerk, including Credit Card Surcharge amount |
| Unattended Cardholder-Activated Terminal | Main entrance(s) of the Merchant Outlet (if applicable) (for example: gas [petrol] station store) in a minimum 32-point Arial font, but in any case no smaller or less prominent than surrounding text | On the Unattended Cardholder-Activated Terminal or virtual disclosure on the payment terminal screen, in a minimum 16-point Arial font, but in any case no smaller or less prominent than surrounding text |

For an Electronic Commerce Transaction, a Mail/Phone Order Transaction, and an Unattended Transaction, the Cardholder must be provided the opportunity to cancel the Transaction subsequent to the Credit Card Surcharge disclosure.

In the US Region or a US Territory: Merchants with Acceptance Devices that offer Cardholder choice for debit Transactions in the form of "credit" and "debit" buttons must ensure that both:

- Debit Card Transactions are not assessed a Credit Card Surcharge
- It is made clear to the Cardholder that surcharges are not permitted on debit Transactions regardless of whether a Cardholder selects the "credit" or "debit" button

48. Accordingly, if the Transaction Fee is treated as a surcharge, the failure to disclose and explain the fee until the final checkout screen supports Plaintiff's allegations that the payment flow was deceptive and unfair.

**The Payment Interface**

49. In the K-12 online payment industry, FSS and/or one or more John Doe Defendants had a substantial position because the relevant payment-processing system integrated with several SIS and school food-service platforms.

50. For MySchoolAccount, and the other SIS companies with which FSS and/or one or more John Doe Defendants had integrations or partnerships, this integration gave the responsible Defendants substantial control over the payment process, including the user interface, fee presentation, and final transaction total that the consumer sees.

51. The responsible Defendants used this control to impose a mandatory Transaction Fee that was not disclosed before checkout.

52. Parents' lunch money payment process began in an SIS, such as PowerSchool, Skyward (Family Access or Qmlativ), Café Enterprise, Meals Plus, Nutrikids, JMC, eTrition, Lumen, QSP, School Dining, Springbrook, Tyler Food, WebSmartt, WinSNAP, or Wordware.

53. The SIS displayed the amount the parent chose to pay for lunch money but did not disclose how any fee would be calculated or imposed by FSS the responsible Defendants.

54. For example, on the MySchoolAccount platform, if a parent were to click FAQ, the parent would be redirected to the applicable website, which explained how to add money for lunch and, upon information and belief, did not disclose the Transaction Fee, as depicted below.

## How do I deposit money into my account?

1 - From the Dashboard, click on the **Deposit Funds** button.

2 - Find the **My Students** box (shown below).

**MY STUDENTS**

| STUDENT | TOTAL BALANCE | MEALPLAN BALANCE | ALA CARTE BALANCE | MEAL PLAN | ALA CARTE | |
|---|---|---|---|---|---|---|
| Courtney Carver | $282.20 | $37.00 | $245.20 | .00 | .00 | VIEW HISTORY |
| Brittnee Moore | $73.50 | $45.00 | $28.50 | .00 | .00 | VIEW HISTORY |
| Barbara Witherow | $34.76 | $29.00 | $5.76 | .00 | .00 | VIEW HISTORY |
| | | | | | **Subtotal** | **$0.00** |

3 - Fill in the amount to deposit in the **Meal Plan** or **Ala Carte** field.

4 - Select your payment method and click **Make Deposit.** (Allowable funding methods are made at the discretion of the School/District)

5 - For first time users, you will be asked to add your billing and payment information. Then click **Proceed.**

6 - Confirm your order then select your preferred **payment method.**

55. For all SIS platforms other than MySchoolAccount, once the parent confirmed the deposit amount on an SIS, the system automatically transferred the parent to Defendants' payment portal to complete the transaction. This transfer was mandatory; there was no alternative processor available, and the payment could not be completed outside of Defendants' portal.

56. Because MySchoolAccount itself served as the payment interface, a parent using MySchoolAccount was not necessarily transferred to a separate payment portal before reaching checkout.

57. Upon first using MySchoolAccount, parents were required to create an account associated with the MySchoolAccount payment interface.

58. For SIS platforms other than MySchoolAccount, when parents were transferred to the applicable payment portal from the SIS for the first time, they were required to create an account with FSS and/or the applicable payment-platform operator.

59. Nothing in the MySchoolAccount account-creation process authorized or disclosed a flat Transaction Fee.

60. It was only at the parents' final checkout screen that the Transaction Fee was appended to the payment amount. At that point, the parent had no realistic or practical ability to abandon the transaction without leaving their child without lunch funds.

61. As such, the $4 Transaction Fee was automatically added with no opt-out within the online payment flow; added after the parent selected the payment amount in the SIS; not disclosed in the applicable portal account-creation process or online materials; and not reasonably expected by consumers.

62. By disclosing the fee only at checkout, Defendants coerced parents into paying the fee, creating a "drip pricing" scheme deemed deceptive under federal guidance and state law.

63. A company engages in drip pricing when it initially discloses only a portion of the true price for a product or service, and then reveals the rest ("dripping" out) later in the purchase process, after the buyer has already expended time and effort selecting the product or service and indicated interest in making a particular purchase.

64. Drip pricing deceives buyers as to the true purchase price and can lead them to pay more than they would otherwise choose to if they were given truthful and complete information from the outset. Buyers who are subjected to drip pricing, who are not provided the complete price until checkout, are likely to proceed with their purchases even if the ultimate price is more than they intended to pay and even if further searching could yield a cheaper price, because they want to avoid the cost of the time and cognitive effort involved in continuing to search for a product or service.

65. Additionally, parents are more likely to proceed with making the online upload of lunch money on an SIS when the advertised cost of the transaction is artificially low due to drip

pricing, because they make their decision(s) to upload lunch money online based on the (falsely) advertised price rather than the true, final prices they will be charged.

66. Industry research confirms the unfair and deceptive nature of drip pricing, and its significant negative effects on purchasers.[1]

**The Transaction Fee Is a Junk Fee**

67. Imposition of junk fees is a related but distinct unfair and deceptive practice.

68. "Junk fees" refer to charges presented as "fees" in connection with purchases that do not have an independent value or that the consumer would not voluntarily select if given the choice.

69. Plaintiff alleges that the Transaction Fee was a junk fee because it was presented as a mandatory fee in connection with an online school-lunch payment, was not disclosed until final checkout, was not tied to any separate service selected by the consumer, and was not explained as reflecting the cost of any particular transaction.

70. The Transaction Fee at issue in this case is a quintessential example of a junk fee. During the relevant time period, parents were presented with the Transaction Fee at the final step of their checkout process. The responsible Defendants never explained or represented how the Transaction Fee comprised a legitimate charge. Instead, parents were presented with the fee after they had already attempted to authorize payment through the applicable SIS and had no real practical ability to reassess or avoid the charge within the payment flow.

[1] Tom Blake, Sarah Moshary, Kane Sweeney & Steve Tadelis, Price Salience and Product Choice, 40 Mktg. Sci. 4, at 633 (2021), *available at* https://faculty.haas.berkeley.edu/stadelis/AIP.pdf (last accessed September 2, 2026).

71. Studies have found, among other things, that consumers underestimate the total price of a given product or service when the seller splits out a portion of the price as junk fees (even if the base price plus the junk fees are presented simultaneously).[2]

72. Imposition of unfair and deceptive junk fees under these circumstances takes advantage of the psychological principle of "anchoring and adjustment," in which people "overweight the anchor information (e.g., the base price) and adjust insufficiently for the rest of the information (e.g., the [junk fee])."

73. Junk fees and drip pricing can be combined, resulting in even more unfair and deceptive sales practices. As noted above, junk fees lead purchasers to pay higher prices even when the fees are disclosed at the same time as the base price. By hiding the existence and amount of junk fees until late in the transaction process, sellers of services like Defendants force consumers to rely on inaccurately advertised base prices, thereby reducing or eliminating purchasers' ability "to identify the cheapest offer."

74. When junk fees and drip pricing are combined (as here), consumers are forced either to "incur higher total search and cognitive costs or to make an incomplete, less informed decision that may result in a more costly [purchase], or both."

75. As alleged here, that combination left parents with incomplete information until final checkout and required them either to proceed with the unexpected fee or incur additional time, effort, and burden to pursue alternatives.

[2] Mary W. Sullivan, *Economic Issues: Economic Analysis of Hotel Resort Fees*, Bureau of Econ. Fed. Trade Comm'n 21-22 (Jan. 2017), *available at* https://www.ftc.gov/reports/economic-analysis-hotel-resort-fees (last access September 2, 2026).

**Defendants' Junk Fee and Drip Pricing Practices Were Unfair and Deceptive**

76. The responsible Defendants did not disclose the existence or amount of the mandatory "Transaction Fee" that would be added to the price of each lunch money transaction parents made until the last stage of the payment process.

77. The responsible Defendants did not offer any explanation within the payment flow as to the purpose the Transaction Fee was meant to serve.

78. The responsible Defendants did not explain the purpose of the Transaction Fee because, upon information and belief, the fee did not relate to any separate service or feature that parents might voluntarily choose to purchase.

79. Nor did the Transaction Fee relate to the responsible Defendants' actual cost of processing the lunch money payment transaction.

80. The responsible Defendants did not offer parents a meaningful fee-free alternative within the online payment flow that would avoid the Transaction Fee after the parent selected a lunch-money payment amount.

81. As a practical matter, many parents cannot reasonably be expected to rely on cash or checks for routine lunch-money payments, particularly where those alternatives may require advance planning, physical delivery through a child, school-office coordination, transportation, or time away from work.

82. The reason the responsible Defendants did not disclose the Transaction Fee beforehand or alert parents to fee-free options at the point of sale is simple: the challenged fee practices generated additional revenue from late-stage fee disclosure and unfair drip pricing and junk fee practices.

83. The responsible Defendants were not required to withhold disclosure of the existence and amount of the Transaction Fee until the final step in the payment process.

84. The responsible Defendants could have disclosed the fee earlier in the payment transaction flow. For example, the fee could have been displayed, or required to be displayed, at the point where users entered the amount of lunch money to be uploaded through MySchoolAccount or an integrated SIS payment flow.

85. With respect to MySchoolAccount specifically, because FSS owned or operated that payment interface, FSS could have disclosed the fee before requiring payment.

86. Accordingly, Defendants' own conduct demonstrates that their use of unfair and deceptive drip pricing was entirely voluntary.

**Defendants Misrepresented the Nature and Purpose of the Transaction Fee**

87. The responsible Defendants misrepresented to parents the nature and purpose of the Transaction Fee. By labeling this charge as a "Transaction Fee," and providing no additional information, they suggested that it reflected the actual cost of the transaction. But the truth is that the flat Transaction Fee far exceeded the actual cost of processing the transaction and functioned primarily as a profit center for FSS and/or one or more John Doe Defendants.

88. The characterization of the charge as a "Transaction Fee" was false and deceptive because the amount charged bore no reasonable relationship to the costs FSS or any responsible Defendant incurred to process transactions or maintain the payment interface; the fee was not explained as payment for any separate service or value selected by the consumer; and, if classified as a surcharge under applicable payment rules or agreements, the fee was not presented with the advance disclosure, explanation, and limitations required for that type of charge.

89. Applicable card-network rules or related payment rules are relevant to whether the Transaction Fee was fairly disclosed and accurately characterized. To the extent those rules or agreements governed Plaintiff's Visa credit-card transactions, the presentation of the "Transaction Fee"—including inserting the fee only at final checkout without advance disclosure or explanation—supports Plaintiff's allegations that the fee was deceptive, misleading, and unfair.

90. Moreover, the presentation of the Transaction Fee was false and deceptive because the fee was presented as an unexplained mandatory "Transaction Fee," without disclosure of whether it was imposed by the school district, FSS, or another Defendant, and without disclosure of the basis for the charge.

91. Upon information and belief, FSS and/or one or more John Doe Defendants received, retained, controlled, or benefited from all or part of the Transaction Fee revenues. The precise recipient, allocation, and flow of those funds are uniquely within Defendants' knowledge and will be confirmed through discovery.

**Plaintiff's Facts**

92. Plaintiff has a child enrolled in a Cook County, Illinois school.

93. Plaintiff maintained a parent account on the MySchoolAccount payment interface used by the school for the 2024–2025 school year.

94. At no time during her registration for or use of the MySchoolAccount payment interface did that interface disclose or authorize FSS or any John Doe Defendant to charge a flat Transaction Fee in addition to the cost of lunch payments. Moreover, Plaintiff was not told what additional value the Transaction Fee provided to her.

95. Plaintiff paid a Transaction Fee on multiple occasions when paying her child's lunch money balances online, using a Visa credit card, which was not disclosed to her until the final step of the payment process.

96. For example, Plaintiff paid a flat $4 Transaction Fee when she deposited $62.55 for student lunch money, resulting in a total charge of $66.55.

MySchoolAccount

Preorder Payment Confirmation

You have requested an email notification when a payment was successfully processed from your parent account. The following payment was processed on 4/27/2025 1:08:16 PM (EST).

**Please allow a few minutes for your school or food service provider to receive your payment.**

**Transaction ID: 9284415**. Please refer to this number if you have any questions about this transaction.

| Student ID | Student Name | School | Amount Posted |
|---|---|---|---|
| 161920 | Charles Helmold | St. Cajetan School | $62.55 |
| | | **Transaction Fee** | **$4.00** |
| | | **Total amount charged to your Credit Card (****5047)** | **$66.55** |

97. In that instance, the $4 Transaction Fee represented approximately 6.4% of the deposit amount, a percentage that would be materially higher than a reasonable consumer would expect for an unexplained card-processing charge and materially higher than the percentage Plaintiff would have understood before reaching the final checkout screen.

98. On another occasion, Plaintiff paid a flat $4 Transaction Fee when she deposited $56.30 for student lunch money, resulting in a total charge of $60.30.

MySchoolAccount

Preorder Payment Confirmation

You have requested an email notification when a payment was successfully processed from your parent account. The following payment was processed on 3/26/2025 9:44:50 AM (EST).

**Please allow a few minutes for your school or food service provider to receive your payment.**

**Transaction ID: 9251448**. Please refer to this number if you have any questions about this transaction.

| Student ID | Student Name | School | Amount Posted |
|---|---|---|---|
| 161920 | Charles Helmold | St. Cajetan School | $56.30 |
| | | **Transaction Fee** | **$4.00** |
| | | **Total amount charged to your Credit Card (****5047)** | **$60.30** |

99. In that transaction, the $4 Transaction Fee represented approximately 7.1% of the deposit amount, again materially higher than a reasonable consumer would expect for an unexplained card-processing charge and materially higher than the percentage Plaintiff would have understood before reaching the final checkout screen.

100. To make these payments, Plaintiff logged into MySchoolAccount, proceeded through the payment flow, and saw "V" branding or a "V" logo associated with the payment interface at or near the point of transaction.

101. Plaintiff believes that, during her first use of the applicable payment portal, she was required to create a MySchoolAccount account associated with Defendants' payment interface.

102. Any applicable disclosures did not authorize or disclose a flat Transaction Fee to be charged on top of any transaction amount.

103. Nothing in Plaintiff's account creation authorized or disclosed that a flat Transaction Fee would be charged at checkout for each lunch money transaction.

104. It was not practical for Plaintiff to send cash or checks to pay for school fees or lunch money, nor for Plaintiff to drive to the school herself to make those payments.

105. In sum: there was no disclosure of the flat Transaction Fee within the MySchoolAccount payment interface or applicable terms of use; no disclosure of the fee during account set-up or in the relevant website materials; no explanation anywhere of how the fee is calculated; no upfront notice about the fee before Plaintiff invested time in making the online payment; and the Transaction Fee only appeared at the final payment screen.

106. Plaintiff made these school payments through the applicable payment portal and paid the Transaction Fee with her Visa credit card.

107. Plaintiff paid the Transaction Fee each time believing it to be a permissible and properly disclosed charge. She was unaware of the true nature, basis, recipient, and payment-rule classification of the Transaction Fee. She paid the Transaction Fee only because she was deceived by the late-stage fee disclosure and lacked meaningful prior notice or a practical ability to avoid the charge.

108. A reasonable consumer in Plaintiff's position would likewise be confused or misled to believe that the Transaction Fee was a normal part of the transaction, rather than a unilateral surcharge or payment charge imposed by FSS and/or one or more John Doe Defendants.

109. Upon information and belief, FSS and/or one or more John Doe Defendants received, retained, controlled, or benefited from all or part of each Transaction Fee paid by Plaintiff. The precise recipients, allocation, and flow of those funds are uniquely within Defendants' knowledge and will be confirmed through discovery.

110. As a result of Defendants' conduct, Plaintiff suffered actual damages in the amount of the Transaction Fees she paid.

**CLASS ACTION ALLEGATIONS**

111. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and a class of similarly situated individuals, defined as follows:

> All persons in Illinois who, during the applicable limitations period, paid a Transaction Fee.

112. Excluded from the Class are: (i) any judge or magistrate judge presiding over this action and members of their staff, as well as members of their families; (ii) FSS, the John Doe Defendants, their predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which FSS or any John Doe Defendant has a controlling interest; (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) counsel for the Parties; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

113. Numerosity: Due to the number of school districts served by FSS and/or one or more John Doe Defendants, the Class is believed to comprise many thousands of members. It is, therefore, impractical to join each member of the Class as a named Plaintiff.

114. Typicality: Plaintiff's claims are typical of the Class because Plaintiff and Class members used the same MySchoolAccount payment flow or a substantially similar school lunch-account payment flow, were charged the same Transaction Fee in connection with school lunch-account deposits, and were exposed to the same late-stage disclosure practice that forms the basis of the allegations in this complaint.

115. Commonality and Predominance: Plaintiff alleges that Defendants used a common payment flow, or substantially similar payment flows, that failed to disclose the

challenged flat Transaction Fee before checkout and revealed the fee only at the final stage of the school-lunch payment transaction. Common legal and factual questions include, but are not limited to, the following:

a. Whether the practice of disclosing the Transaction Fee only at checkout constitutes unfair and deceptive drip pricing;

b. Whether the description of the Transaction Fee was unfair and deceptive;

c. Whether the challenged conduct violated ICFA, or violated other applicable law; and

d. Whether the challenged conduct caused injury to Plaintiff and members of the Class, and if so, the appropriate measure of damages.

116. Adequacy: Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff can fairly and adequately represent and protect the interests of the Class. Neither Plaintiff nor her counsel has any interest adverse to, or in conflict with, the interests of absent class members. Plaintiff has raised viable statutory and restitutionary claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Complaint to include additional class representatives, additional claims, or to amend the class definitions.

117. Superiority: A class action is a superior mechanism for the fair and efficient adjudication of this controversy because individual litigation of the claims of all class members is impracticable. Even if every class member could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and

expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, maintaining this action as a class action presents few management difficulties, conserves the resources of the parties and the court system, promotes consistent adjudication of common issues, and protects the rights of absent class members. Classwide treatment is therefore superior for adjudicating and enforcing the claims of the Class.

## CAUSES OF ACTION

### COUNT I

### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2

*(Against FSS and Any John Doe Defendant Shown to Be Liable, on Behalf of the Class)*

118. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

119. At all times relevant to this complaint, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, was in effect.

120. ICFA prohibits unfair or deceptive acts or practices, including, but not limited to, "misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact," or "the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 ILCS 510/2]" (815 ILCS 505/2), such as "conduct which . . . creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(12).

121. FSS and any John Doe Defendant shown to have directed, controlled, implemented, approved, participated in, or benefited from the challenged payment practices affecting Illinois consumers are "persons" subject to ICFA.

122. FSS operated the MySchoolAccount platform and collected or benefited from Transaction Fees from Illinois residents during its period of operation. Plaintiff further alleges,

subject to discovery, that one or more Successor Entity John Does, V Entity John Does, Parent and Controlling Entity John Does, or other John Doe Defendants may be liable under ICFA to the extent they participated in, directed, controlled, implemented, approved, or benefited from the challenged payment practices directed at Illinois consumers.

123. As detailed above, FSS and/or one or more John Doe Defendants made material misrepresentations and omissions to parents using the payment portal. They misrepresented or omitted material facts concerning the nature, basis, recipient, and classification of the Transaction Fee, including by failing to disclose the fee until final checkout and by misrepresenting it as a legitimate charge.

124. The drip pricing and junk fee practices alleged herein—specifically, delaying disclosure of the Transaction Fee until the final step of the payment flow and misrepresenting the nature of the fee—constitute unfair or unconscionable acts because the responsible Defendants designed the payment process so that parents would pay not only the amount of lunch money selected, but also an undisclosed and purposeless Transaction Fee. By withholding disclosure of the Transaction Fee until the end of the transaction, the responsible Defendants created a likelihood of confusion or misunderstanding among reasonable consumers.

125. A reasonable consumer in Plaintiff's position would have been misled into believing that the Transaction Fee was a legitimate, authorized, and properly disclosed charge. In reality, FSS and/or one or more John Doe Defendants had no disclosed contractual or legal basis for imposing the fee in the manner alleged.

126. The responsible Defendants intended that Plaintiff and Class members rely on the above misrepresentations and omissions. They intended that Illinois consumers would proceed with payments under the impression that the fee was proper, authorized, and unavoidable. They

knew that if consumers understood the fee was unauthorized or excessive, consumers might refuse to pay or complain.

127. Plaintiff and Class members did, in fact, rely on the above representations and omissions. Plaintiff believed that the Transaction Fee was authorized because the fee appeared as part of the payment flow and no contrary disclosure was provided. Due to the alleged deception, she paid the fee without objection, unaware of the true facts.

128. The acts and practices described above were deceptive and unfair. They offended public policy favoring truthful price disclosure and transparency in consumer transactions. They were oppressive because parents who needed to complete school-lunch payments were presented with the Transaction Fee only after investing time in the payment flow and may have faced burdensome offline alternatives, presenting little choice but to submit. And they caused substantial injury to consumers through monetary loss of fees that should not have been charged or should have been disclosed before the consumer entered the payment flow.

129. As a direct and proximate result of the deceptive and unfair acts alleged above, Plaintiff and Class members have been damaged in that they paid money they should not have had to pay. The total injury across members of the Class is substantial. Consumers could not reasonably avoid the injury because the Transaction Fee was disclosed only at the final stage of the payment flow and because fee-free alternatives, where available, required materially greater effort, planning, or burden than the online payment process.

130. Pursuant to 815 ILCS 505/10a, Plaintiff and the Class seek relief including actual economic damages in the amount of Transaction Fees paid, punitive damages as allowed by law, and an award of reasonable attorneys' fees and costs.

## COUNT II

## Unjust Enrichment

*(Against FSS and Any John Doe Defendant Shown to Have Received, Retained, Controlled, Directed, or Been Unjustly Benefited by Transaction Fee Revenues, on Behalf of the Class, in the Alternative)*

131. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

132. Plaintiff pleads Count II in the alternative to the statutory count above. This Count seeks restitution, money had and received, unjust-enrichment relief, and, where appropriate, equitable tracing or constructive-trust relief from FSS and any John Doe Defendant shown to have received, retained, controlled, directed, or been unjustly benefited by Transaction Fee revenues paid by Plaintiff or members Class.

133. Upon information and belief, Plaintiff and Class members conferred a direct and measurable monetary benefit on one or more Defendants in the form of Transaction Fees. Those fees were paid without adequate prior disclosure and under circumstances where Plaintiff and class members had no practical ability to avoid payment once the fee appeared at final checkout.

134. FSS received, retained, controlled, or benefited from Transaction Fee payments made through the MySchoolAccount payment portal during the period of its operation, including the Transaction Fees paid by Plaintiff.

135. To the extent discovery shows that one or more V Entity John Does received, retained, controlled, directed, or were unjustly benefited by Transaction Fee revenues, those entities were unjustly enriched by funds collected through the challenged payment practices described herein.

136. Plaintiff separately pleads that any successor, direct participant, assumed-liability, merger, continuation, or transferee-liability theory provides a basis for extending FSS's

underlying liability to another entity if discovery establishes the factual and legal basis for doing so, including an asset transfer, direct participation, assumption of liabilities, de facto merger, continuation of enterprise, fraudulent transfer, receipt of assets or revenues, or other transaction making that entity legally responsible for FSS's obligations.

137. To the extent discovery shows that any John Doe Defendant received, retained, controlled, or was unjustly benefited by Transaction Fee revenues, or directed or exercised control over the challenged fee practices while receiving the financial benefit of those practices, that entity was unjustly enriched by the payments made by Plaintiff and Class members.

138. Under the circumstances, it would be unjust and inequitable for any entity shown to have received, retained, controlled, directed, or been unjustly benefited by Transaction Fee revenues to retain those funds. Retention of such benefits violates the fundamental principles of justice, equity, and good conscience.

139. Plaintiff and Class members are entitled to restitution of Transaction Fees paid to, retained by, controlled by, directed by, or used to unjustly benefit FSS or any John Doe Defendant shown to have received or benefited from those revenues, together with such equitable and legal relief as the Court deems just and proper, interest, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the putative Class defined above, respectfully requests that this Court enter an Order:

(a) Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing her counsel as Class Counsel;

(b) Granting judgment in favor of Plaintiff and the Class against FSS and any John Doe Defendant shown to be liable for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, and awarding actual damages, punitive damages, attorneys' fees and costs, and other relief recoverable pursuant to 815 ILCS 505/10a;

(d) Granting restitution, money had and received, unjust-enrichment relief, equitable tracing, constructive-trust relief where appropriate, or other equitable relief under Count II, in the alternative, on behalf of the Class against FSS or any John Doe Defendant shown to have received, retained, controlled, directed, or been unjustly benefited by Transaction Fee revenues;

(e) Awarding pre-judgment and post-judgment interest at the maximum rate allowed by law; and

(f) Awarding such other and further relief as equity and justice may require.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Dated: September 18, 2026

Respectfully submitted,

*/s/ Martin W. Jaszczuk*

Martin W. Jaszczuk
Margaret M. Schuchardt
JASZCZUK P.C.
311 South Wacker Drive, Suite 2150
Chicago, Illinois 60606
Tel: (312) 442-0509
mjaszczuk@jaszczuk.com
mschuchardt@jaszczuk.com

*/s/ Matthew T. Peterson*
Matthew Peterson
Consumer Law Advocate, PLLC
230 E. Ohio St., Suite 410
Chicago, IL 60611
Tel: (815) 999-9130
mtp@lawsforconsumers.com
ARDC No. 6321290

*Attorneys for Plaintiff and the Class*